148

No. 60,833

In the Matter of the Inquiry Relating to GEORGE G. LEVANS,
District Magistrate Judge.

(744 P.2d 800)

Opinion filed October 30,
1987.

*Frederick G. Apt., Jr.,* of Iola, and *George G. Levans,* pro se, argued the cause
for the respondent.

*Edward G. Collister, Jr.,* of Lawrence, argued the cause for the Commission
on Judicial Qualifications.

*Per Curiam:* This is an original proceeding in discipline commenced against the respondent, Magistrate Judge George G. Levans, of the Allen County District Court, 31st Judicial District, before the Commission on Judicial Qualifications. The respondent and his attorney appeared before the Commission and announced that a stipulation had been entered into by the respondent and his counsel and the examiner of the commission. The stipulation was as follows:

"STIPULATION

"COME NOW the undersigned, and hereby stipulate that the following Statement of Facts and Conclusions of Law are true and accurate in the above referenced proceeding, and agree to be bound by said stipulations in the resolution of the pending proceeding.

"STATEMENT OF FACTS

"1. On January 5, 1986, Respondent removed eight (8) railroad ties which appeared to him to be used and which belonged to the Atchison, Topeka and Santa Fe Railway Company, from stacked bundles of new ties in Iola, Kansas. Respondent contends that, earlier, in the summer of 1985, he had asked for permission to have some ties and was given permission by someone he believed to be a Santa Fe employee. He felt that the person with whom he spoke had authority to authorize removal of ties.

"Respondent removed eight (8) new ties some four months after he asserts he received permission. He had no written permission to remove the ties.

"2. Respondent was at first uncooperative in responding to an investigation of the missing ties by Larry Montgomery, Special Police Agent of Atchison, Topeka and Santa Fe Railway Company. After Mr. Montgomery identified himself as a law enforcement officer, Respondent gave a vague description of the person he alleged had granted him permission to take the ties. Agent Montgomery felt that

it was not an accurate description of railroad personnel. Upon continued questioning, Respondent varied the description a little bit, but continued to be vague about details. He also was uncertain about the exact time when he was given permission to take the railroad ties saying only 'some time in the summer' of 1985. Respondent was requested to give a written statement and at first hesitated, however, a short time later he did give a written statement to Mr. Montgomery.

"It is Respondent's claim that the reason he did not provide Agent Montgomery with detailed information when interrogated was because he was afraid the railroad was trying to find out the name of the person he alleges gave him permission to take the ties and was going to take punitive action against that person.

"Respondent, when requested, supplied the Commissioner's Examiner with additional and different details. Respondent indicated to the Examiner that he felt Mr. Montgomery was inquiring of him information which he could use to locate the railroad employee who gave Respondent permission to take the railroad ties and that the railroad employee would lose his job. Respondent indicated that some time around July 15 to August 15, in the hot summer of 1985, he had received permission from someone on the Santa Fe crew to take some ties. After inquiring about the ties along the railroad tracks in Iola, Kansas, Respondent was told to talk to a supervisor who was allegedly at a truck. Respondent indicated that there were two individuals at the truck; one in his late 20's or early 30's, and one in his early 50's, both white males. The truck was a railroad truck. One of the two alleged supervisors wore a yellow hard hat and one a white hard hat. The younger man had a blue shirt, short sleeves, a moustache, and a belt holster with a can of 'Skoal' in it. Respondent indicated that it was this person who gave him permission to take ties and that it was not necessary to pay anything for the ties.

## "CONCLUSIONS OF LAW

"A. The conduct of Respondent in paragraph 1 of the Statement of Facts does not fully comply with the provisions of Canon 1 of the Canons of Judicial Conduct which provide:

" 'A judge should participate in establishing, maintaining and enforcing, and should himself observe high standards of conduct so that the integrity and independence of the judiciary may be preserved.'

"Respondent should have verified the purported authority to give away the property of another or obtained written permission. He should have realized any permission given to take ties would reasonably not have included new railroad ties. He should have realized a delay of four (4) to six (6) months in picking up any ties authorized to be removed could easily give the appearance of being improper.

"B. Respondent's conduct as indicated in paragraph 2 of the Statement of Facts likewise does not fully comply with the provisions of Canon 1 of the Canons of Judicial Conduct to the effect that:

" 'A judge should participate in establishing, maintaining and enforcing, and should himself observe high standards of conduct so that the integrity and independence of the judiciary may be preserved.'

"The sequence as outlined in the Statement of Facts indicates Respondent did not fully 'observe high standards of conduct so that the integrity . . . of the judiciary may be preserved.' A judge has the obligation to cooperate both with law enforcement personnel in the investigation of alleged crimes or the Commission in its investigation of alleged violations of the Canons. Respondent did not fully cooperate with Mr. Montgomery during the initial investigation. He gave him a vague description of a person who was an integral part of the investigation. He did not observe the high standard of conduct required of the judiciary.

"C. The manner in which Respondent conducted himself during the investigation of the incident referred to in paragraphs 1 and 2 of the Statement of Facts does not fully comply with the requirements of Canon 2 of the Canons of Judicial Conduct to the effect that:

" 'A judge should avoid impropriety and the appearance of impropriety in all his activities, and that a judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.'

"A judicial officer has the obligation to at all times fully, openly and candidly cooperate in any legitimate investigation of possible illegal or improper acts by duly authorized investigators. Respondent's conduct was not consistent with that obligation.

"For the foregoing reasons set forth previously based on the Statement of Facts set forth in paragraphs 1 and 2, Respondent has violated the provisions of Canons 1 and 2 of the Canons of Judicial Conduct as indicated."

The Commission adopted the stipulated statement of facts and conclusions of law and recommended to the Kansas Supreme Court that the respondent be disciplined pursuant to Rule 620 (235 Kan. clxxvii) by public censure.

The respondent elected not to file exceptions to the Commission's findings of fact, conclusions of law, and recommendations.

On September 18, 1987, respondent and his counsel appeared before this court and the matter was submitted to the court for decision.

The Commission on Judicial Qualifications found that the respondent's conduct did not fully comply with the provisions of Canons 1 and 2 of the Rules Relating to Judicial Conduct (235 Kan. clxiii). We agree. A judge, even in his private life, is held to standards higher than others. Judges should at all times conduct themselves in a manner that promotes public confidence in the integrity and impartiality of the judiciary, so that the integrity and independence of the judiciary may be preserved. Here, the

respondent has stipulated that he was in violation of those Canons.

It is therefore ordered that George G. Levans be publicly censured by this court, and that he pay the costs of this proceeding.